UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAMELA SUE DELPH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:16-cv-02461-TWP-DML |
| ) | |
| NANCY A. BERRYHILL, ) | |
| ) | |
| Defendant. ) | |

Report and Recommendation
on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the decision of the Commissioner of the Social Security Administration that plaintiff Pamela Sue Delph is not disabled.

**Introduction**

Ms. Delph applied on March 29, 2012, for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging that she has been disabled since November 11, 2008. Acting for the Commissioner of the Social Security Administration following a hearing on September 5, 2014, an administrative law judge (ALJ) found that Ms. Delph is not disabled. The Appeals Council denied review of the ALJ's decision on July 23, 2016, rendering the ALJ's decision for the

Commissioner final. Ms. Delph timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. Delph's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Ms. Delph is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration (SSA) has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The

third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

3

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Administrative Proceedings

Ms. Delph was born in 1962 and was 51 years old at the time of the administrative hearing in 2014. At the hearing, Ms. Delph and a vocational expert testified.

At step one, the ALJ determined that Ms. Delph had not engaged in substantial gainful activity since November 11, 2008, the alleged onset date. At step two, the ALJ found Ms. Delph had the following severe impairments: "seizure disorder, status post open reduction and internal fixation of a left ankle fracture,

remote fusion at L2-L4, status post closed head injury, and alcoholism." (R. 20). At step three, the ALJ concluded that Ms. Delph did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.

Considering her impairments, the ALJ determined Ms. Delph has the RFC to perform light work as defined in the regulations, with the following limitations: She can lift and carry 10 pounds frequently and 20 pounds occasionally. She can stand and walk for six hours out of an eight-hour workday and sit for six hours out of an eight-hour workday with normal breaks. She can push and pull within the lifting and carrying limitations. She has no limitations in kneeling, crouching, or crawling and can frequently balance, stoop, and climb ramps and stairs. However, she can never climb ladders, ropes, or other scaffolds. She must avoid all unprotected heights and hazardous machinery, and cannot drive occupationally. She cannot work at a job where there are open flames, flashing lights, large open containers of liquid, or sharp implements or tools. (R. 23).

With this RFC and based on the ALJ's review of testimony of a vocational expert (VE), the ALJ found at step four that Ms. Delph was able to perform past relevant work. Therefore, the ALJ determined Ms. Delph has not been under a disability from November 11, 2008, through December 31, 2013, the date last insured. (R. 29-30). Ms. Delph now challenges this outcome.

## Analysis

Ms. Delph argues the following reversible errors necessitate remand: (1) the ALJ erred by finding Ms. Delph's mental impairments resulted in no more than

5

minimal impairment of her ability to work; (2) even if Ms. Delph's mental impairments appropriately were found not severe, the ALJ failed to consider properly Ms. Delph's mental impairments in the RFC finding; (3) the ALJ failed to develop the record with respect to Ms. Delph's cognitive deficits; and (4) the ALJ failed to consider Ms. Delph's work history in her credibility assessment. The court will address each of these arguments in turn.

>   I.  **The ALJ ignored a contrary line of evidence in her step two determination and RFC analysis.**

In her step two decision, the ALJ found that Ms. Delph had several severe impairments, but specifically found that Ms. Delph's "medically determinable mental impairments of borderline personality disorder, major depressive disorder and panic disorder, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore non-severe." (R. 20-21). Ms. Delph argues that the record evidences more than minimal mental impairment. The Commissioner argues that any error at step two is harmless in this case, as the ALJ found Ms. Delph had severe impairments and proceeded to the subsequent steps in the analysis.

The Commissioner is correct that the Seventh Circuit has explained, "[a]s long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process." *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) (internal citations omitted). As a result, "the step two determination of severity is 'merely a threshold requirement.'" *Id.* at 927 (citing *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999)). However, the Seventh

6

Circuit more recently has characterized the step two determination as a "'*de minimis* screening for groundless claims' intended to exclude slight abnormalities that only minimally impact a claimant's basic activities." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016).

In *O'Connor-Spinner*, the ALJ determined the claimant's depression had not, and never had been, a severe impairment, although the claimant had been diagnosed with "major depression, recurrent severe." *Id.* at 692-93. The court disagreed: "A diagnosis of 'major depression' means, *by definition*, that an individual's 'symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.'" *Id.* at 693 (emphasis in original).

In rejecting the ALJ's step two determination, the Seventh Circuit further explained:

> But here the ALJ decided that 'major depression, recurrent *severe*' isn't a severe impairment based on the opinions of two state-agency psychologists who did not even examine, let alone treat, [the claimant]. That determination is not supported by substantial evidence and, indeed, strikes us as nonsensical given that the diagnosis, by definition, reflects a practitioner's assessment that the patient suffers from 'clinically significant distress or impairment in social, occupational, or other important areas of functioning . . . . We have not found a published opinion from any circuit in which an ALJ declared that major depression was not a severe impairment, although two unpublished opinions soundly reject this assertion . . . . Rather than relying on the guidance of professionals and evidence from [the claimant's] treating sources, the ALJ 'played doctor' by substituting his opinion for their medical judgment.

7

*Id.* at 697 (internal citations omitted) (emphasis in original).

Like the claimant in *O'Connor-Spinner*, Ms. Delph received multiple diagnoses of (among other things) major depressive disorder – including by two state agency examiners – although one consultative examiner qualified his diagnosis of major depressive disorder with the notation "presently mild." (R. 452, 465, 486). One of Ms. Delph's treating physicians, Dr. Kapoor, "strongly advised" Ms. Delph to seek psychiatric or psychological treatment to address the mental impairments, including depression and suicidal thoughts, Ms. Delph relayed to her. (R. 476). Even the internal medicine consultative examiner, Dr. Peachy, reported that Ms. Delph needed psychiatric and neurological evaluation. (R. 471).

Setting aside whether Ms. Delph's mental impairments were severe or non-severe, the ALJ is forbidden at every step of the analysis from cherry-picking evidence supporting her finding while ignoring contradictory information. Nowhere in the ALJ's fourteen-page opinion, at step two, or in what should have been the more detailed analysis in formulating the RFC, does the ALJ mention Ms. Delph's two suicide attempts – one in March 2009 and the other in July 2010 (R. 414, 425). The ALJ, while quick to point out elsewhere that opinions from the agency consultants show "fairly normal psychological functioning" (R. 27), completely ignores the contrary evidence of Ms. Delph's suicide attempts and the medical records reflecting same.

The ALJ also minimized the findings by the examining psychologists and treating providers, choosing instead to give "great weight" to the non-examining

8

medical consultants' assessments that Ms. Delph's mental impairments were non-severe (R. 99, 122) with the boilerplate explanation that their assessments were "supported by the evidence in the file and are generally consistent with the record as a whole." (R. 27). As the ALJ failed to consider a significant contrary line of evidence in her analysis at step two and in formulating the RFC, remand is required.

## II.   The ALJ failed to develop a full and fair record.

Ms. Delph argues that the ALJ additionally erred by failing to develop the record regarding Ms. Delph's cognitive deficits. (Br. at 13). Ms. Delph maintains that the ALJ has a "basic" and "absolute" duty to ensure a full and fair record is developed, even when a claimant is represented by counsel. (*Id.*) Ms. Delph asserts that the ALJ acknowledged a "significant" gap in the medical record at the hearing, but then failed to "exercise her duty to develop the record with respect to this issue" and failed to explain in her opinion why she did not order an additional examination. (*Id.* at 13, 15) Although the Commissioner argues that the "ALJ had no duty to obtain another consultative examination because [she] had sufficient evidence to determine that Plaintiff was not disabled" (Br. at 16), the Commissioner's brief is silent on the ALJ's lack of explanation for her decision not to order an additional consultative examination.

At the end of the hearing, the ALJ informed Ms. Delph and her representatives as follows:

> ALJ: Okay. I can tell you I was – I'm debating ordering a neuropsychological CE. There was an indication, I can't

> remember if it was in 8-F, which is from Dr. Kapoor, without looking back through my notes there was a recommendation for that. If I do order a consultative examination, Ms. Delph, it would be performed in Indiana. You wouldn't be coming back here. We would arrange for that through the Arizona Disability Determination Services to contact the Indiana Disability Determination Services, and they'd find somebody there. But we're going to hold the record open for approximately four weeks to get those records we were just discussing, and then meanwhile make a decision about the consultative exam, and you would get an appointment letter in the mail. Once I have all the evidence then I will issue a written decision . . . .

(R. 81-82).

While a claimant bears the burden of proving disability, the ALJ has the duty to develop a full and fair record. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). An ALJ's "[f]ailure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence." *Id.* In this case, the ALJ suggested that the agency may order additional testing because of a gap in the record and the recommendation for such testing from Ms. Delph's neurologist; the Commissioner should not fault Ms. Delph and her counsel for failing to obtain such additional evidence on their own while the ALJ held open the record. (*See* Br. at 15-16).

Furthermore, the ALJ's decision does not mention the fact that she said she was considering ordering a neuropsychological consultative examination, let alone explain her decision not to order one. Even more troubling is the fact that the *absence* of this testing was one of the ALJ's explicit reasons for giving the opinion of Ms. Delph's treating neurologist "little to no weight": "Although Dr. Kapoor indicated she would arrange for neuropsychological testing, the record does not

10

show that was ever done." (R. 28). The facts here are strikingly similar to those in *Smith*, where the Seventh Circuit remanded in part because the ALJ failed to order updated X-rays and then faulted a treating provider for not ordering X-rays to confirm the presence of arthritis. 231 F.3d at 437-38. Remand is required on this ground as well.

### III. Substantial evidence supports the ALJ's credibility determination.

The court must give special deference to the ALJ's assessment of Ms. Delph's credibility. Only if it lacks "explanation and support," may the court determine that it is patently wrong and requires remand. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (internal citations omitted) (court's role is limited to examining whether the ALJ's determination was "reasoned and supported" and only when the ALJ's determination lacks "any explanation or support" may the court "declare it to be 'patently wrong' and deserving of reversal").

Social Security Regulation 96-7p[1] describes the appropriate process for evaluating credibility and requires an ALJ to consider a claimant's subjective complaints in light of the relevant objective medical evidence, as well as any other pertinent evidence regarding the claimant's daily activities, the location, duration, frequency, and intensity of the claimant's symptoms, precipitating and aggravating factors, medication, treatment, and other measures to relieve the person's symptoms and their efficacy and side-effects, and any other factors relevant to

---

[1] While SSR 16-3, effective March 28, 2016, superseded SSR 96-7p, SSR 96-7p applies here.

11

functional limitations due to pain or other symptoms. *See* SSR 96-7p. It is not necessary for the ALJ to recite findings on every factor, but the ALJ must give reasons for the weight given to the claimant's statement so that the claimant and subsequent reviewers have a fair sense of how the claimant's testimony was evaluated. *Brindsi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003) (ALJ must comply with SSR 96-7p in making credibility determination by articulating the reasons behind the determination).

Ms. Delph's only specific argument regarding the ALJ's credibility analysis is that the ALJ erred by failing to mention Ms. Delph's "strong work history." She "simply points out that an ALJ is unambiguously required to consider this factor as *part of* the credibility assessment, and simply did not do so." (Br. at 18) (emphasis in original). As discussed above, however, the ALJ need only articulate the reasons behind her determination; she need not explicitly mention every factor. Furthermore, as the Seventh Circuit recently explained, "work history is just one factor among many, and it is not dispositive." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). Curiously, although Ms. Delph cites to no fewer than 22 court opinions on the issue of work history and credibility, she neglected to include the Seventh Circuit's decision in *Loveless*.

Here, the ALJ specifically identified several reasons for her negative credibility assessment, including "various inconsistencies" regarding the frequency of Ms. Delph's seizures, the cause of her seizures, the amount of alcohol ingested, and whether she drives. (R. 26).

12

Ms. Delph has not shown that the ALJ's credibility determination is unreasoned or unsupported. The ALJ's silence on work history "is not enough to negate the substantial evidence supporting the adverse credibility finding." *Loveless*, 810 F.3d at 508. The ALJ's credibility assessment is not patently wrong.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the Commissioner's decision under sentence four of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Date: 1/23/2018

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system

13